IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | |
|---|---|
| FAMATA FAHNBULLEH, | |
| Plaintiff, | |
| v. | Civil Action No. 8:10-CV-02074-AW |
| GFZ REALTY, LLC, *et al.*, | |
| Defendants. | |

**MEMORANDUM OPINION**

The matter before the Court is Defendant Pinnacle Realty Management Company ("Pinnacle")'s motion to dismiss counts I, III and IV of the Amended Complaint. Doc. No. 36. The Court has reviewed the documents filed by the Parties and finds no hearing is necessary. *See* Loc. R. 105(6) (D. Md. 2010). For the reasons that follow, the motion will be granted in part and denied in part.

**I.  FACTUAL & PROCEDURAL BACKGROUND**

The following facts are drawn from the Amended Complaint unless otherwise noted. In November 2006, Plaintiff began working for Pinnacle. In August 2007, Pinnacle assigned Plaintiff to work as the onsite Residential Business Manager for an apartment complex called Park Terrace Apartments ("Park Terrace"). From August 2007 until December 2008, Pinnacle jointly managed Park Terrance with GFZ Realty, Inc., *a.k.a.* Vanguard Realty Group ("Vanguard"). The partnership ceased on December 31, 2008, and beginning in January 2009, Vanguard became the sole manager of Park Terrace and the exclusive employer of Plaintiff.

1

Plaintiff not only worked at Park Terrace, but also resided there as a tenant with her husband, daughter, and foster daughter. Her apartment was located directly above that of Ermine Jackson, who allegedly subjected her to relentless sexual harassment. The harassment began on August 27, 2008, when Jackson sent an email to Plaintiff's employee email account, asking Plaintiff "if she wanted to be his 'secret lover.'" Am. Compl. ¶ 9. Plaintiff found the email offensive and reported it to her supervisor, Rose Raines, and to a Vanguard human resources official, Jennifer Ellsworth. Raines and Ellsworth took no remedial action at that time.

The Amended Complaint provides numerous examples of allegedly harassing behaviors by Jackson and deficient corrective responses by her employers. For purposes of resolving this motion, it is not necessary to recount every episode, but merely to provide a few examples to illustrate the nature of the case.

Jackson's harassment gradually escalated from sexually explicit email messages to in-person encounters. Plaintiff reports a number of occasions in which Jackson walked past her desk and brushed up against her body, offered to perform oral sex, asked if she was going to have sex with him, told her that she would lose her job unless she had sex with him, and other incidents. Plaintiff complained to Raines and/or Ellsworth about these incidents, but they did not take corrective action. Instead, Raines allegedly asked Plaintiff what she had done to attract Jackson, and Ellsworth informed her that nothing could be done about Jackson because he was a tenant, not an employee.

In May 2009, Raines directed Plaintiff to visit Jackson's apartment to complete an annual inspection as required by county law. Plaintiff explained that she was reluctant to enter and inspect Jackson's apartment, but Raines demanded that Plaintiff inspect all Park Terrace

2

residences, including Jackson's apartment. Plaintiff arrived at Jackson's apartment to complete the inspection with Park Terrace maintenance technician, Wellington Gonzalez. Jackson came to the door with no shirt, refused to allow Gonzalez to enter, and shouted expletives and threats. Eventually Jackson allowed both Plaintiff and Gonzalez to enter, but he blocked Plaintiff's path and hovered over her.

Due to these and numerous other incidents, on July 9, 2009, Plaintiff petitioned for a temporary peace order from the Montgomery County District Court barring Jackson from any contact with her. She filed the petition *pro se*, without the aid of Defendants. Plaintiff informed Raines that she had filed the petition. On July 13, Vanguard sent Jackson a Notice to Quit and to Vacate his apartment. The same day, the court issued a temporary peace order.

Despite the peace order and the Notice to Quit, Jackson's harassment continued. Ultimately, Plaintiff sought help from the Vanguard corporate headquarters. On July 20, Plaintiff, along with her husband, met with several Vanguard executives to explain Jackson's history of sexual harassment toward Plaintiff. The executives directed Plaintiff to stop attending work and to vacate her residence temporarily, offering to pay for her hotel expenses during the interim.

On July 31, Plaintiff again met with Vanguard executives. However, they informed her that her employment with Vanguard would terminate effective August 31, 2009. In the meantime, Vanguard directed Plaintiff to begin moving the rest of her belongings from her Park Terrace apartment. After intervention by Plaintiff's counsel, claiming that Plaintiff had been subjected to illegal discrimination and retaliation, Vanguard reinstated Plaintiff to a position in the corporate office in September 2009.

Plaintiff brought this action in July 2010, seeking recovery for housing- and employment-related discrimination and retaliation, as well as violation of the covenant of quiet enjoyment of her apartment. Pinnacle moves to dismiss count I on the grounds that the Federal Housing Act, 42 U.S.C. §§ 3604-3631 ("FHA"), does not authorize hostile-environment sexual-harassment claims for tenant-on-tenant harassment. Pinnacle also moves to dismiss counts III and IV based on Plaintiff's failure to exhaust her administrative remedies. Plaintiff concedes the second of these arguments, so counts III and IV will be dismissed without prejudice. The remainder of the opinion will focus on count I.

## II.     STANDARD OF REVIEW

The purpose of a motion to dismiss is "to test the sufficiency of [the] complaint." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Except in certain specified cases, the complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2). A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007).

In its determination, the Court must "accept the well-pleaded allegations of the complaint as true," *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and "must construe factual allegations in the light most favorable to the plaintiff," *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999). The Court should not, however, accept unsupported legal allegations, *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), "legal

4

conclusion[s] couched as . . . factual allegation[s]," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

### III.   ANALYSIS

The FHA provides, in pertinent part, that it shall be unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith" on the basis of a protected characteristic. § 3604(b). Plaintiff contends she was harassed based on her sex and race and that Defendant failed to take corrective measures to prevent such harassment.

The Fourth Circuit has not directly considered whether a landlord or property manager can be liable under Title VIII for failing to take corrective action against tenant-on-tenant harassment. Nonetheless, the Fourth Circuit recognizes that Title VII and Title VIII share the same central "anti-discrimination objectives" and has treated doctrine regarding the definition of discrimination under Title VII and Title VIII as largely interchangeable. *Smith v. Town of Clarkton, N.C.,* 682 F.2d 1055, 1065 (4th Cir. 1982).

Mindful of the similarity of Title VII and Title VIII, this Court as previously held that the hostile-environment theory of discrimination that courts have developed in the Title VII employment context also applies in FHA actions. *See Williams v. Poretsky Mgmt., Inc.,* 955 F. Supp. 490, 494 (D. Md. 1996). A landlord is liable for hostile-housing-environment harassment when: "(1) the subject conduct was unwelcome; (2) it was based on the sex of the plaintiff; (3) it was sufficiently severe or pervasive to alter the plaintiff's conditions of [tenancy] and to create

5

an abusive [living] environment; and (4) it was imputable on some factual basis to the employer." *Id.* at 496 & n.2 (quotation and quotation marks omitted).

Pinnacle does not suggest that *Williams* should be overruled or that no hostile-environment theory of discrimination is available under the FHA. Instead, Pinnacle contends that recovery should be limited to situations in which the alleged harassment is "imputable" to the landlord, *id.*, such as when the landlord's agents participate in or encourage the harassment. By contrast, there should be no recovery when the harassment was perpetrated by a tenant, because there is no agency relationship between landlord and tenant to justify imputing responsibility to the landlord. *See Oh. Civil Rights Comm'n v. Akron Metro. Housing Auth.*, 892 N.E. 2d 415, 420 (2008) (rejecting landlord liability for tenant harassment due to "the absence of an agency relationship between a landlord and his tenants and the landlord's comparative lack of control over his tenants").

The Court disagrees. Drawing upon principles that are well-established in the context of Title VII hostile-environment doctrine, *Williams* held that "[c]onduct is imputable to a landlord, if the landlord 'knew or should have known of the harassment, and took no effectual action to correct the situation.'" 955 F. Supp. at 496 (quoting *Katz v. Dole*, 709 F.2d 251, 256 (4th Cir.1983)). It is true that most hostile-environment actions are based on the conduct of employees, where a clear agency relationship exists between the employer and the perpetrator. However, employer liability under Title VII is not limited to harassment perpetrated by employees. Employers can also be liable for the harassing conduct of a third party, such as a customer, "if the employer ratifies or acquiesces in the customer's demands." *Hylind v. Xerox*

6

*Corp.*, 380 F. Supp. 2d 705, 716 (D. Md. 2005).[1]  In some circumstances, employers are "required to protect [their] employees from illegal acts of [their] own employees and non-employees alike," and this duty "may require employers to exercise control over individuals not under [their] employ."  *Graves v. Cnty. of Dauphin*, 98 F. Supp. 2d 613, 620 (M.D. Pa. 2000).

Just as employers sometimes have the ability and the duty to control the work environment to protect employees from harassment, including harassment by non-employees, landlords may also be held liable for the harassment of tenants by other tenants under certain circumstances.  To hold otherwise would be to introduce an unjustified discrepancy between Title VII and Title VIII theories of harassment and discrimination.  Because the only issue currently before the Court is Pinnacle's argument that tenant-on-tenant harassment can *never* be imputed to the landlord (absent participation by the landlord or its agents), the Court need not decide precisely what factual circumstances justify holding landlords liable for tenant harassment, nor whether such circumstances are present in this case.  The Court merely holds that there is no categorical rule that prevents FHA recovery for hostile-housing-environment sexual harassment based on tenant-on-tenant harassment.

IV.  **CONCLUSION**

---

[1] *See generally Graves v. Cnty. of Dauphin*, 98 F. Supp. 2d 613, 620 (M.D. Pa. 2000) (observing that "the emerging trend among federal courts is to permit a cause of action under Title VII against employers for the sexual harassment of employees by non-employees"); *see, e.g.*, *Folkerson v. Circus Circus Enters., Inc.*, 107 F.3d 754, 756 (9th Cir. 1997) ("[A]n employer may be held liable for sexual harassment on the part of a private individual, such as the casino patron, where the employer either ratifies or acquiesces in the harassment by not taking immediate and/or corrective actions when it knew or should have known of the conduct."); *Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1072 (10th Cir. 1998) ("[T]he record contains sufficient evidence to support the jury's conclusion that the harassing conduct of the customers was severe enough to create an actionable hostile work environment.").

For the foregoing reasons, Pinnacle's partial motion to dismiss will be granted in part (as to counts III and IV) and denied in part (as to count I). Pinnacle must answer or otherwise respond to the Amended Complaint within ten days. A separate order will follow.

| | |
|---|---|
|   July 7, 2011   |         /s/         |
| Date | Alexander Williams, Jr. |
| | United States District Judge |